**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **YOUSHITA ALIZADEH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-26-1316-HE** |
| | ) | |
| **MARKWAYNE MULLIN, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Youshita Alizadeh, a noncitizen[1], seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge Joe Heaton referred the case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded to the petition, Doc. 10, and Petitioner replied, Doc. 11. So the matter is at issue.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for immediate release subject to an appropriate Order of Supervision (OOS).

---

1 This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

2 Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

## I. Factual background and procedural history.

Petitioner, an Iranian citizen, has a May 8, 2007 final order of removal. Doc. 1, at 4; Doc. 10, at 2. Immigration officials were unable to effectuate his removal, and on May 19, 2008, released him from custody on an OOS, Doc. 10, at 2 (citing Ex. 2), and he remained on supervision for seventeen years. Doc. 1, at 4. During this time, he reported to Immigration & Customs Enforcement (ICE) as directed, held gainful employment, and supported his U.S. citizen spouse. Doc. 1, at 8. On July 2, 2025, without warning or explanation, ICE detained Petitioner. *Id.*

Deportation Officer Samuel Detrés Bobé states that Petitioner received both his 90- and 180-post order custody reviews. Doc. 10, Ex. 4, at 3-4. He states that on September 29, 2025, ICE Enforcement Removal Operations (ERO) compiled a travel document request package. *Id.* at 3. On December 24, 2025, ICE ERO updated this package. *Id.* at 4. On February 17, 2026, the package was forwarded to ICE ERO Removal and International Operations (RIO) division for review. *Id.* The next day, RIO informed ICE ERO that Petitioner was being placed on a third-country removal list. *Id.*

On March 20, 2026, RIO stated the third-country removal remained pending. *Id.* On May 14, 2026, Petitioner was transferred to the Diamondback

Correctional Facility in Watonga, Oklahoma. *Id.* Officer Bobé states that ICE has been actively working this case and that there is significant likelihood of removal in the reasonably foreseeable future and cites statistics about recent removals of Iranian citizens. *Id.* at 4-5.

**II. Petitioner's claims.**

Petitioner asserts three grounds for relief:

(1) His continued detention is unlawful under 8 U.S.C. § 1231(a)(6) as applied in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there is no significant likelihood of his removal in the reasonably foreseeable future;

(2) ICE violated its own regulations and statutes in failing to adhere to 8 C.F.R. § 241.3's revocation procedures; and

(3) His continued detention violates his Fifth Amendment substantive due process rights.

*Id.* at 14-16.

He seeks his immediate release subject to reasonable conditions of supervision; an order restricting Respondents from moving Petitioner from this district during the pendency of this action,[3] an order requiring Respondents not to remove him to any country other than Iran because the Immigration Judge only designated Iran in its order of removal; and an award

[3] The Court addressed this issue in its Order for a Response. *See* Doc. 8.

of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.[4] *Id*. at 25.

**III. Standard of review.**

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas,* 533 U.S. at 687); *see also Zadvydas*, 533 U.S. at 687 ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases.").

[4] To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

## IV. Analysis.

### A. Respondents improperly revoked Petitioner's OOS when they failed to give him notice or an interview upon revocation.

In Ground Two, Petitioner alleges Respondents have not provided him with the reasons for his re-detention following his release on supervision, an interview at which he can present evidence demonstrating there is no significant likelihood of his removal in the reasonably foreseeable future, or an explanation of what changed circumstances allegedly justified or currently justify his re-detention. Doc. 1, at 12-14. And so he argues that Respondents have violated their own regulations in re-detaining him. *Id.* Respondents argue that any error is harmless because he has received notice through the briefing of this case. Doc. 10, at 9. The undersigned finds Respondents violated their regulations in revoking Petitioner's OOS and re-detaining him.

Respondents state they revoked Petitioner's OOS because they "have the [statutory] authority to re-detain Petitioner to effectuate his removal." Doc. 10, at 6-7. Based on this, they argue their revocation of Petitioner's OOS was "lawful" under 8 C.F.R. § 241.14(l)(2)(iii). *Id.* at 7.

"The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations." *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *1 (W.D. Okla. Apr. 30,

2026) (quoting *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025)). Under § 241.13(i), "federal authorities may revoke an order of supervised release and 'return the alien to custody' 'if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" *Tran*, 2026 WL 1181700, at *2 (quoting 8 C.F.R. § 241.13(i)(2)). "Alternatively, an order of supervision may be revoked if the noncitizen 'violates any of the conditions of release.'" *Id.* (quoting § 241.13(i)(1)). "Revocation *for either* reason triggers a notification requirement and a review process." *Id.* (emphasis added).

> Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien ***may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.*** The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added). Respondents' revocation of Petitioner's OOS triggered the review process in subsection three. *Tran*, 2026 WL 1181700, at *2. So, contrary to Respondents' assertions, they were required to provide both notice and an interview to Petitioner upon revoking his OOS.

In his declaration to this Court, Officer Bobé does not state Petitioner received notice or an interview when taken into custody. Doc. 10, Ex. 4. He states Petitioner was "arrested and brought into" custody. *Id.* at 3. ICE did not provide Petitioner adequate notice. *See, e.g.*, *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) (Section 241.13(i)(3) "requires not just notice, but notice that specifies 'the reason for revocation of his or her release.'" (quoting 8 C.F.R. 241.13(i)(3))). And the subsequent custody evaluations and determinations are "not sufficient under § 241.13(i)(3)." *Id.*

When Respondents re-detained Petitioner on July 2, 2025, they failed to give him proper notice, or a prompt informal interview as required by 8 C.F.R. § 241.13(i). "[S]uch regulatory defects amount to due process violations that entitle a petitioner to habeas relief.'" *Tran*, 2026 WL 1181700, at *3 (internal quotation marks omitted) (distinguishing *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3 (W.D. Okla. Oct. 31, 2025)); *see also* *Basssam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382, at *3 (W.D. Okla. June 26, 2026) ("[T]he Court agrees with the magistrate judge that ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and that his release is therefore appropriate under 28 U.S.C. § 2241(c)(3).").

### B. Petitioner sufficiently establishes a violation of his Due Process rights under the Fifth Amendment and *Zadvydas*.

Even if the Court were to find Respondents gave Petitioner adequate notice under § 241.13, the undersigned finds Respondents have not met their burden that Petitioner's removal is significantly likely in the reasonably foreseeable future (Petitioner's first and third claims).

Detention of a noncitizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the ninety-day removal period. *Zadvydas*, 533 U.S. at 701. After that, the detainee may bring a habeas action to challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner "must show 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Bui*, 2026 WL 788947, at *5 (quoting *Zadvydas*, 533 U.S. at 701). "The government must 'then respond with evidence sufficient to rebut that showing' or release the individual." *Id.*

Petitioner has met his burden in this case. Respondents re-detained Petitioner over a year ago. Respondents released Petitioner under an OOS in 2008 after they could not effectuate his removal; he then remained under supervision for seventeen years. *See* Doc. 10, at 2. Respondents have neither obtained travel documents nor identified a third country nor any

communications with a third country. There is no showing Petitioner has a passport for a third country. These administrative impediments were extant as recently as May 2026, and no information exists as to efforts after that date. Doc. 10, Ex. 4, at 4.

In an attempt to rebut Petitioner's showing, Officer Bobé states that ERO is "not aware of any facts that would now preclude [Petitioner's] removal to a third country." *Id.* at 5. He states Petitioner's removal "is significantly likely in the reasonably foreseeable future" citing ICE's removals of Iranian citizens to third countries in recent years. *Id.* at 4-5.

This Court has rejected conclusory statements, such as those from Officer Bobé. *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025), ("Respondents provide no information about whether the Canadian Embassy has responded to ICE's inquiry about Petitioner specifically or even more generally about whether it can or has been able to issue travel documents for those similarly situated to Petitioner."), *adopted*, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025). To sustain its burden the Government must offer more than "generalized evidence." *Bui*, 2026 WL 788947, at *5. It must actually make legitimate progress towards removal. *See Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) (stating that "[T]he reasonableness of Petitioner's detention turns on whether and to

what extent the government's efforts are likely to bear fruit. Diligent efforts alone will not support continued detention."). The Government offers no timeline, no confirmed destination, and no evidence that removal is imminent. It therefore fails to show that removal is reasonably foreseeable. *See Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025) ("[M]ere intent to find a third country," absent "specific communications between the United States and an identified country" is "too speculative to permit indefinite detention"), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025); *Vargas v. Noem*, 2025 WL 2770679, at *3 (D. Kan. Sep. 29, 2025) (same).

Respondents have not met their burden of demonstrating Petitioner's removal is significantly likely in the reasonably foreseeable future. So his continued detention is unconstitutional. *Zadvydas*, 533 U.S. at 701. Accordingly, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release subject to an appropriate OOS. *See Bui*, 2026 WL 788947, at *6 (ordering the petitioner's immediate release "subject to an appropriate Order of Supervision").

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for a writ of habeas corpus, Doc. 1, and order his immediate release from custody within three business days, subject to an

appropriate OOS. **The undersigned further recommends that the Court order Respondents certify compliance by filing a status report within ten business days of the Court's order.**

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by August 12, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[5] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[5] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 7th day of August, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE